IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEKSANDR RADION,

            Petitioner,                2: 08 - cv - 2921 - GEB TJB

    vs.

MIKE EVANS,

            Respondent.      ORDER, FINDINGS AND

                                   RECOMMENDATIONS

_____/

      Petitioner, Aleksandr Radion, is a state prisoner proceeding with a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a stipulated sentence of eleven years four months in prison.  In the state case underlying this petition for habeas corpus, a jury convicted Petitioner on one count of driving under the influence of alcohol causing injury (Cal. Veh. Code § 23153(a)), one count of driving with a .08 percent or higher blood alcohol level causing injury (Cal. Veh. Code § 23153(b)), and one count of driving with a suspended license (Cal. Veh. Code § 14601.5(a)).  The jury additionally found that Petitioner had inflicted great bodily injury in the commission of these offenses (Cal. Penal Code § 12002.7(a)).  After the jury reached its verdicts, but before Petitioner was sentenced, Petitioner entered into a plea agreement in another case involving a robbery.  The plea agreement in the unrelated robbery

case encompassed sentencing for his convictions in this matter.  Petitioner raises ten claims in this federal habeas petition; specifically: (1) Petitioner's trial counsel was ineffective for failing to make a motion to dismiss the charges at the preliminary hearing due to insufficient evidence ("Claim I"); (2) his trial counsel was ineffective for failing to object to the jury instructions with regard to reasonable doubt on the ground that it violated due process ("Claim II"); (3) his trial counsel was ineffective for failing to object to the jury instructions with regard to reasonable doubt on the ground that it violated the Ex Post Facto clause ("Claim III"); (4) his trial counsel was ineffective for failing to make a reasonable investigation with regard to the circumstances surrounding a statement made by the Petitioner and for failing to challenge the admission of Petitioner's statement as involuntary in violation of due process and the Vienna Convention ("Claim IV"); (5) his trial counsel was ineffective for failing to object to the prosecutor's statement in closing argument about Petitioner's refusal to testify on his own behalf ("Claim V"); (6) his trial counsel was ineffective for failing to object when the prosecutor "vouched" for the prosecution's witnesses during closing argument ("Claim VI"); (7) his trial counsel was ineffective for failing to object to the trial court's reading of the jury instructions without them being transcribed by the court reporter ("Claim VII"); (8) his trial counsel was ineffective for failing to cross-examine a witness to establish the driver of the other car involved in the crash had been drinking alcohol ("Claim VIII"); (9) the trial court acted in excess of its jurisdiction when it imposed a victim restitution fine without conducting a hearing ("Claim IX"); and, (10) his appellate counsel was ineffective for failing to raise any specific issues on direct appeal ("Claim X").  For the reasons stated herein, the federal habeas petition should be denied.

/ / /

/ / /

/ / /

1

## I.  FACTUAL BACKGROUND[1]

2

The charges in this matter stem from an incident in which
defendant, whose driver's license was suspended, drove his car

3

through a red light and struck another car that was attempting to
make a lawful left turn.  Defendant fled on foot and was discovered

4

hiding in a garage.  He was transported to a hospital for treatment
of injuries he sustained in the collision, at which time his blood

5

was drawn to determine his sobriety.  Defendant's blood alcohol
concentration was determined to be .15 percent.  As a result of the

6

collision, the driver of the other car suffered a concussion,
fractured ribs, a ruptured diaphragm, a ruptured kidney and a

7

ruptured spleen that had to be removed.

8

## II.  PROCEDURAL HISTORY

9

On May 1, 2006, a Sacramento County jury convicted Petitioner in case number

10

05F06318 (the "DUI case") of the following four counts: (1) driving under the influence causing

11

bodily injury (Cal. Veh. Code § 23153(a)); (2) driving with a blood alcohol above .08 causing

12

bodily injury (Cal. Veh. Code § 23153(b)); (3)  hit and run causing bodily injury (Cal. Veh. Code

13

§ 20001(a)); and, (4) driving with a suspended license (Cal. Veh. Code § 14601.5(a)).  The jury

14

further found an enhancement for personally inflicting great bodily injury as to counts 1, 2, and 3.

15

Clerk's Tr. at 78-81.  The next day, in separately-pending case number 05F07944 (the "robbery

16

case"), Petitioner pled no contest to robbery (Cal. Penal Code § 211) with enhancements for use

17

of a deadly weapon (Cal. Penal Code § 12022(b)(1)), inflicting great bodily injury (Cal. Penal

18

Code § 12022.7(a)), and committing the offense while on bail (Cal. Penal Code § 12022.1).

19

Rep.'s Tr. at 315-16.  In exchange, the remaining charges for assault with a deadly weapon (Cal.

20

Penal Code § 245(a)(1)), second-degree burglary (Cal. Penal Code § 459), and other vehicle code

21

infractions were all dismissed with a waiver pursuant to *People v. Harvey*, 25 Cal. 3d 754, 602

22

P.2d 396, 159 Cal. Rptr. 696 (1979) (allowing a court to base a victim restitution order on unfiled

23

charges with the defendant's waiver).  Clerk's Tr. at 75; Rep.'s Tr. at 317-18.  As part of the plea

24

25

[1]  The factual background is taken from the California Court of Appeal, Third
Appellate District decision on direct appeal from June 2007 and filed in this Court by

26

Respondent on March 28, 2011 as Exhibit A to his answer (hereinafter referred to as the "Slip
Op.").

1   agreement, Petitioner was ultimately sentenced, on both cases combined, to a stipulated

2   aggregate term of eleven years and four months.  Clerk's Tr. at 173; Rep.'s Tr. at 309-11; Lodged

3   Doc. No. 4 (Corrected Abstract of Judgment).

4          Petitioner did not appeal the robbery case, but did appeal the DUI case.  It is the DUI case

5   that is the subject of this habeas corpus petition.  Apparently believing the appeal was frivolous,

6   Petitioner's court-appointed appellate counsel did not raise any specific issues in her appellate

7   brief but summarized the state court proceedings and asked the appellate court to independently

8   review the record.  *See* Lodged Doc. No. 1 (Appellant's Opening Brief), at 9; *People v. Wende*,

9   25 Cal. 3d 436, 158 Cal. Rptr. 839, 600 P.2d 1071 (1979) (establishing procedure for attorneys

10  and lower courts when a defendant wishes to file an appeal that appellate counsel believes lacks

11  merit).  Though Petitioner's appellate counsel informed Petitioner of his right to file a

12  supplemental brief raising any issues he believed deserved review, Petitioner did not file  an

13  additional brief with the Court of Appeal.  Slip Op. at 3.  After undertaking an independent

14  review of the record, The Court of Appeal found no arguable error that would result in a

15  disposition more favorable to Petitioner and affirmed the judgment.  *Id.*

16         Petitioner then filed a petition for habeas corpus in Sacramento County Superior Court.

17  *See* Lodged Doc. No. 5.  In his petition, Petitioner raised all but one of the claims that he now

18  raises in his federal habeas petition.  In a reasoned decision which reached the merits of

19  Petitioner's claims, the Superior Court denied Petitioner relief.  Petitioner's petitions to the

20  California Court of Appeal and the California Supreme Court were thereafter summarily denied.

21  Lodged Doc. Nos. 6 & 8.  In these petitions, Petitioner raised his additional claim of ineffective

22  appellate counsel.

23         On December 2, 2008, Petitioner's federal petition for habeas corpus was filed in this

24  court.  Respondent was ordered to answer the petition, and admitted that Petitioner's claims were

25  exhausted and timely.  Resp't's Answer, at ¶ 3.

26  */ / /*

4

III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  *See* 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). "The relevant state court determination for purposes of AEDPA review is the last reasoned state court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting same claim rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and whether the state court's decision was objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher

5

1   threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

2   "When it is clear, however, that the state court has not decided an issue, we review that question

3   *de novo*." *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

4   545 U.S. 374, 377 (2005)).

5                       IV.  ANALYSIS OF PETITIONER'S CLAIMS

6          1.  Claim I

7          In Claim I, Petitioner argues that his trial counsel was ineffective for failing to make a

8   motion to dismiss the charges at the preliminary hearing due to insufficient evidence.  As with

9   the rest of Petitioner's claims except for Claim X, the last reasoned state court decision is the

10  decision by the Sacramento Superior Court on Petitioner's petition for habeas corpus.  *See*

11  Lodged Doc. No. 6; *Delgadillo*, 527 F.3d at 925.   The Superior Court set forth the appropriate

12  standard for determining ineffective assistance of counsel claims and ruled on Petitioner's claim

13  as follows:

14              The failure to move to dismiss an information under Penal Code
                section 995 may have been the result of a tactical decision.
15              (*People v. White* (1981) 118 Cal.App.3d 767, 774.)

16              Petitioner argues that trial counsel should have filed a motion to
                dismiss pursuant to Penal Code section 995 on the grounds that
17              there was no admissible evidence at the preliminary hearing
                regarding Petitioner's blood alcohol content.  However, he presents
18              no evidence that the decision not to file the motion was not a
                tactical decision.  Therefore, he has not shown that trial counsel's
19              failure was unreasonable.  Nor has he shown that the failure
                resulted in prejudice.  Even if trial counsel had successfully moved
20              to dismiss, the prosecutor could have re-filed the case.  (*See* Pen.
                Code § 1387.)
21

22  Lodged Doc. No. 6, at 2.

23         The Sixth Amendment guarantees effective assistance of counsel.  In *Strickland v.*

24  *Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating

25  ineffective assistance of counsel.  First, the petitioner must show that considering all the

26  circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.*

                                              6

at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See id.* at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance.  *See id.*

Second, a petitioner must affirmatively prove prejudice.  *See id.* at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine the confidence in the outcome."  *Id.*  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).  When analyzing a claim for ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas court's ability to grant the writ is limited by two "highly deferential" standards.  *Premo v. Moore*, __ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "When § 2254(d) applies," as it does here, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

Petitioner alleges that had his counsel made a motion to dismiss after the preliminary hearing the court would have had no option but to dismiss the charges because the only evidence that Petitioner was under the influence of alcohol was the double hearsay testimony of a detective regarding the results of Petitioner's blood test.  Even assuming that this is true, Petitioner cannot establish that he was prejudiced by the failure to make the motion.  First, Petitioner's counsel did object to statements he believed were double hearsay being admitted at the preliminary hearing.  Clerk's Tr. at 32.  The court sustained this motion, but still eventually let the testimonial evidence regarding Petitioner's blood alcohol level into evidence over Petitioner's counsel's

7

1   objection.  *Id.* at 37.  As Petitioner's counsel had already made the objection that Petitioner urges

2   would have made his motion to dismiss successful, yet the court admitted the evidence anyway,

3   it is highly unlikely that the court would overrule its earlier decision and grant the motion to

4   dismiss.  Second, even if the court did dismiss the charges, the prosecutor was free to refile them.

5   *See* Cal. Penal Code § 1387; *see, e.g.*, *Crockett v. Superior Court*, 14 Cal. 3d 433, 437-438, 121

6   Cal. Rptr. 457, 535 P.2d 321 (1975).  After the charges being dismissed for failure to have the

7   appropriate witness at the preliminary hearing, it is doubtful that the prosecution would make the

8   same mistake again when the criminalist who reviewed the blood sample was readily available to

9   testify about the level of alcohol in Petitioner's blood the night of the accident.  The Superior

10  Court reached a reasonable conclusion when it determined Petitioner could not show that he

11  suffered prejudice as a result of his counsel's failure to make a motion to dismiss the charges at

12  the end of the preliminary hearing.  Petitioner is not entitled to relief on this claim.

13      2.  Claim II

14      In Claim II, Petitioner alleges that his trial counsel was deficient for failing to object to

15  the jury instruction with regard to reasonable doubt because the instruction permitted the jury to

16  find Petitioner guilty without the prosecution proving every element of the crime beyond a

17  reasonable doubt.  The instruction in question, CALCRIM No. 220, provides as follows:

18      A defendant in a criminal case is presumed to be innocent.  This
        presumption requires that the People prove each element of a crime
19      and special allegation beyond a reasonable doubt.  Whenever I tell
        you the People must prove something, I mean they must prove it
20      beyond a reasonable doubt.

21      Proof beyond a reasonable doubt is proof that leaves you with an
        abiding conviction that the charge is true. The evidence need not
22      eliminate all possible doubt because everything in life is open to
        some possible or imaginary doubt.

23
        In deciding whether the People have proved their case beyond a
24      reasonable doubt, you must impartially compare and consider all
        the evidence that was received throughout the entire trial. Unless
25      the evidence proves the defendant guilty beyond a reasonable
        doubt, he is entitled to an acquittal and you must find him not
26      guilty.

1    Clerk's Tr. at 104.  The jury was also instructed with another very similar instruction, CALCRIM

2    No. 103.  *Id.* at 96.  In ruling on Petitioner's ineffective assistance of counsel claim with regard

3    to the reasonable doubt instruction, the Superior Court stated:

4                 Petitioner claims that trial counsel failed to object to the trial
              court's instructions on reasonable doubt.  In particular, he claims
5             that giving CALCRIM No. 220 was improper as the jury
              instruction appropriate to Petitioner's case was CALJIC No. 2.90.
6             However, Petitioner's jury was also instructed with CALCRIM No.
              103, which is based on the definition of reasonable doubt set forth
7             in Penal Code section 1096.  Petitioner has not shown that the
              instructions on reasonable doubt, *as a whole*, were improper.
8             Therefore, there was no reason for trial counsel to object to the
              instructions.

9

10   Lodged Doc. No. 6, at 2.

11       Trial counsel cannot be ineffective for failure to make an objection if the objection would

12   have been meritless.  *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).  Here, as the

13   instructions properly convey the reasonable doubt standard as articulated by the Supreme Court

14   of the United States, any objection to the instructions would have been denied.  In *Victor v.*

15   *Nebraska*, 511 U.S. 1, 14-15 (1994), the Supreme Court found "[a]n instruction cast in terms of

16   an abiding conviction as to guilt, without reference to moral certainty, correctly states the

17   government's burden of proof."  That is exactly how the instructions given in Petitioner's trial

18   defined reasonable doubt.

19       Furthermore, Petitioner contends that because the jury was not instructed, pursuant to

20   CALJIC 2.90, that "until the contrary is proved, and in case of a reasonable doubt his guilt is

21   satisfactorily shown, he is entitled to a verdict of not guilty," the jury was able to consider

22   Petitioner's lack of evidence in his own defense as evidence against him.  This contention is

23   meritless.  The jury was twice told: "A defendant in a criminal case is presumed to be innocent.

24   This presumption requires that the People prove each element of a crime and special allegation

25   beyond a reasonable doubt."  Clerk's Tr. at 96, 104.  Additionally, the jury was given an

26   instruction with regard to Petitioner's absolute right not to testify and told Petitioner "may rely

9

on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt." Clerk's Tr. at 117. Thus, the jury was properly informed that the burden was on the prosecution and that it was not necessary for Petitioner to prove his innocence. As such, any objection to the instruction would have been meritless and it is a reasonable conclusion that Petitioner's counsel was not ineffective. Petitioner is not entitled to relief on this claim.

3. Claim III

In Claim III, Petitioner challenges the same reasonable doubt instruction on Ex Post Facto Clause grounds. Petitioner basis this claim on the ground that at the time of the underlying offense in 2005, the recommended jury instruction defining reasonable doubt was CALJIC No. 2.90. His jury was not instructed pursuant to CALJIC No. 2.90, but rather CALCRIM No. 220, which was approved for use as of January 1, 2006. "The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191 (1977) (citation omitted). Furthermore, jury instructions can be created by the court without reference to model jury instructions and are not themselves the law. *See* Cal. Rules of Court, Rule 2.1050(e); *United States v. Porter*, 542 F.3d 1088, 1097 n.4 (5th Cir. 2008) ("pattern jury instructions are not law"). As such, Petitioner does not state a cognizable claim for relief and relief on this claim should be denied.

4. Claim IV

In Claim IV, Petitioner alleges his trial counsel was ineffective for failing to make a reasonable investigation with regard to the circumstances surrounding a statement made by the Petitioner and for failing to challenge the admission of Petitioner's statement as involuntary in violation of due process and the Vienna Convention.[2] The Superior Court ruled on this claim as follows:

---

[2] Petitioner only contends that his statement was involuntary under the Fourteenth Amendment. There is no dispute that Petitioner was properly informed of his rights and that he waived those rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* Rep.'s Tr. at 177-78.

A statement is involuntary if the defendant's ability to reason, understand and resist were so affected that he was incapable of free choice. (*In re Cameron* (1968) 68 Cal.2d 487, 498.) The totality of the circumstances must be considered. (*Id.*) A statement is not involuntary unless there is "coercive police activity." (*Colorado v. Connelly* (1986) 479 U.S. 157, 167.)

Petitioner contends that trial counsel should have investigated the facts surrounding his statement to law enforcement and moved to exclude the statements as involuntary due to Petitioner's injury, medical condition, alcohol level, understanding of English, and law enforcement's failure to notify Petitioner of his right to contact his consulate. First, Petitioner has presented no evidence that he was a Russian national or that Deputy Peyton was aware of that information, requiring any notice of consular rights. Similarly, Petitioner has not identified any medical records that would support his claim that he had a head trauma and was taking pain medication at the time of the interview. Although there is evidence that Petitioner's blood alcohol content was .15 percent, there is no evidence of any coercive police activity that might have rendered Petitioner's Mirandized statement involuntary. While Petitioner asserts that various experts may have testified that his head trauma and blood alcohol content would have affected his ability to make a voluntary statement, he does not provide any expert opinions to support his theory. Finally, Petitioner surmises that if trial counsel had filed a *Pitchess* motion, he may have discovered evidence of Deputy Peyton using excessive force in obtaining statement [sic]. Speculation cannot support a claim on habeas. Therefore, Petitioner has not shown that counsel's failure to investigate or move to suppress was unreasonable.

Lodged Doc. No. 6, at 2-3.

Petitioner's constitutional claim, that his statement was involuntary under the Fourteenth Amendment, must fail for three reasons. His claim under the Vienna Convention is meritless as he has no remedy.

First, Petitioner's claim fails because any objection would have been meritless. In determining the voluntariness of a confession, a court "examines whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citation and internal quotation marks omitted) . "The due process test takes into consideration the totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." *Id.* (citations and internal

1    quotation marks omitted).  We ask: "Is the confession the product of an essentially free and

2    unconstrained choice by its maker?  If it is, if he has willed to confess, it may be used against

3    him.  If it is not, if his will has been overborne and his capacity for self-determination critically

4    impaired, the use of his confession offends due process."  *Schneckloth v. Bustamonte*, 412 U.S.

5    218, 225-26 (1973) (citation omitted).

6         The Fourteenth Amendment, however, is concerned with state action, and under these

7    circumstances protects suspects only from coercive police conduct in obtaining a statement.

8    *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986) (holding that a statement by a mentally ill

9    man suffering from schizophrenia and hallucinations which interfered with his ability to make a

10   free and rational choice was nonetheless voluntary).  "Absent police conduct causally related to

11   the confession, there is simply no basis for concluding that any state actor has deprived a

12   criminal defendant of due process of law."  *Id.* at 164; *see id.* at 167 ("We hold that coercive

13   police activity is a necessary predicate to the finding that a confession is not 'voluntary' within

14   the meaning of the Due Process Clause of the Fourteenth Amendment."); *United States v. Kelley*,

15   953 F.2d 562, 565 (9th Cir. 1992); *Derrick v. Peterson*, 924 F.2d 813, 818 (9th Cir. 1990).  Here,

16   Petitioner does not allege any police misconduct.  Rather, he bases his claim that his statement

17   was involuntary because he had recently been in a car accident, had been drinking, was on pain

18   medication, and was suffering from head trauma.  These are circumstances of his own making,

19   and not the result of police misconduct.  As such, a motion to suppress the statement would have

20   been meritless and failure to make the objection cannot substantiate a claim of ineffective

21   assistance of counsel.

22        Furthermore, even if Petitioner could establish that a motion to suppress the statement

23   would have been successful, he still cannot establish that his counsel was ineffective for failing

24   to object to the statement's introduction.  Petitioner's statement amounted to an admission that

25   he was driving the vehicle involved in the accident, that after the accident he had run and hid in a

26   garage at a residence where he did not know anyone, and that he did this because he knew his

1   license was suspended.  Petitioner did not remember the accident or the color of the traffic light

2   at the time he entered the intersection and did not admit to being drunk.  Rep.'s Tr. at 178-79.

3   Petitioner's counsel had a practical, strategic reason for not objecting to the admission of the

4   statement: he used the statement in an attempt to bolster Petitioner's defense.  In his closing

5   argument, Petitioner's counsel suggested that Petitioner's statement showed that he fled because

6   he had a suspended license, not because he had been drinking.  *Id.* at 273.  Counsel also used the

7   lack of any information regarding Petitioner's consumption of alcohol in the statement in an

8   attempt to show that at the time of the accident Petitioner's blood alcohol level was below .08

9   percent and had only risen to .15 percent in the hours after the accident before the blood sample

10   was taken.  *Id.* at 275-76.  Counsel argued that the failure of the interrogating officer to ask

11   Petitioner about his alcohol consumption left reasonable doubt as to Petitioner's actual

12   intoxication when the accident occurred.  *Id.*  As such, counsel had a rational reason for not

13   objecting to the admission of Petitioner's statement into evidence.  Counsel's performance did

14   not fall below the requisite standard of care.

15        Lastly, even if Petitioner's statement was involuntary and his counsel was deficient for

16   failing to object to its admission, Petitioner cannot show prejudice.  As stated above, Petitioner's

17   statement only admitted that he was driving the car and that he had a suspended license.  The fact

18   that he was driving the car was independently corroborated by eyewitness testimony.  *See* Rep.'s

19   Tr. at 78-80, 99, 106-07.  Petitioner stipulated that at the time of the accident his license was

20   suspended.  *Id.* at 259.  As such, there was other credible evidence that Petitioner was the driver

21   of the car and that his license was suspended and Petitioner cannot establish prejudice as a result

22   of the inclusion of his statement.

23        With regard to Petitioner's claim under Article 36 of the Vienna Convention that he was

24   not informed of his right to speak with his consulate, Petitioner cannot show that this prejudiced

25   his trial in any way.  Assuming that a violation did occur, which is not likely under the facts of

26   this case, the result would not be exclusion of Petitioner's statement.  *Sanchez-Llamas v. Oregon*,

13

1  548 U.S. 331, 350 (2006) ("neither the Vienna Convention itself nor our precedents applying the

2  exclusionary rule support suppression of Sanchez–Llamas' statements to police.").  As such,

3  Petitioner cannot establish that his counsel was ineffective for failing to make a motion to

4  suppress the evidence on this ground.

5      For the foregoing reasons, Petitioner is not entitled to relief on Claim IV.

6      5.  Claim V

7      In Claim V, Petitioner alleges that his trial counsel was ineffective for failing to object,

8  pursuant to *Griffin v. California*, 380 U.S. 609 (1965), to the prosecutor's statement in closing

9  argument about Petitioner's refusal to testify on his own behalf.  In ruling on this claim, the

10  Superior Court held as follows:

11      Defendant [sic] also claims that the prosecutor commented on
12  Petitioner's failure to testify.  In the cited three pages of closing argument, the prosecutor summarized the evidence, including a 911 call, witness testimony, Petitioner's statement to the police,
13  Petitioner's blood alcohol content, and his injuries.  While the prosecutor did state that there was no evidence or testimony to
14  support a defense theory regarding a defect in the brakes, this is not an improper comment on Petitioner's failure to testify.  As there
15  was no *Griffin* error, there was no reason for trial counsel to object.

16  Lodged Doc. No. 6, at 3-4.

17      In *Griffin*, the Supreme Court held that the Due Process Clause prohibits a prosecutor

18  from commenting on a defendant's decision not to testify.  *Griffin*, 380 U.S. at 615.  "A

19  prosecutorial statement 'is impermissible if it is manifestly intended to call attention to the

20  defendant's failure to testify, or is of such a character that the jury would naturally and

21  necessarily take it to be a comment on the failure to testify.'"  *United States v. Mayans*, 17 F.3d

22  1174, 1185 (9th Cir. 1994) (quoting *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir.1987)).

23  Consequently, "prosecutors are entitled to call attention to the defendant's failure to present

24  exculpatory evidence," so long as the comments do not emphasize "the lack of explanation

25  furnished by the defendant" in particular.  *Mayans*, 17 F.3d at 1185; *see United States v. Lopez*,

26  803 F.2d 969, 973 (9th Cir. 1986), *cert. denied*, 481 U.S. 1030 (1987).

1    A careful review of the prosecution's closing argument shows that it was reasonable for

2  the Superior Court to conclude *Griffin* was not violated.  At no point did the prosecution directly

3  comment upon Petitioner's decision not to testify.  At most, the prosecution commented upon the

4  defense's failure to prove that a mechanical problem with the brakes was the actual cause of the

5  accident.  The prosecutor stated:

> Also, when Defense Counsel was arguing she made mention to
> there might have been some mechanical defects in his car that
> made him run the red light.  Now, remember and read the jury
> instructions, if a person has a mechanical defect it is not a defense
> to driving under the influence and causing great bodily injury.  It's
> not an issue in this case because you have heard no evidence that
> there was no type of mechanical defense [sic].  You have heard no
> defense witnesses or any type of testimony that there was some
> defect.  So there is no evidence that there were, but even if there
> were a defect, it's not a defense.  You can't say, well, the brakes
> went out and that is why the accident happened.  That is not a
> dense to driving under the influence and causing bodily injury.

13  Rep.'s Tr. at 286.  This amounts to the prosecutor calling attention to Petitioner's failure to

14  present exculpatory evidence, which is permissible.  *Mayans*, 17 F.3d at 1185.  The prosecution

15  does not explicitly or impliedly discuss Petitioner's decision not to take the stand in his own

16  defense.  Indeed, any evidence regarding a malfunction would necessarily come in a form other

17  than Petitioner's testimony as Petitioner did not remember the accident.  Rep.'s Tr. at 178-79.

18  Any objection to the prosecution's closing argument on *Griffin* grounds would have been

19  meritless.  Therefore, it was reasonable for the Superior Court to conclude that Petitioner's

20  counsel was not ineffective.  Petitioner is not entitled to relief on this claim.

21    6. Claim VI

22    Like Claim V, Claim VI challenges Petitioner's counsel's failure to object to the

23  prosecution's closing argument.  "Petitioner contends pursuant to *Berger v. United States*, 295

24  U.S. 78, 88 (1935), that he is entitled to habeas corpus relief because of the prosecutor vouching

25  for the credibility of the prosecution's witnesses."  Pet'r's Pet. at 21 (other citations omitted).

26  The Superior Court ruled on Petitioner's claim as follows:

A prosecutor is not allowed to vouch for the veracity of a witness based on personal knowledge; however, he may comment based on facts in the record and from reasonably drawn inferences. (*People v. Frye* (1988) 18 Cal.4th 894, 971.). . . .

Defendant asserts that the prosecutor vouched for the government witnesses. Review of the cited page of reporter's transcript shows that the prosecutor merely stated that there was no reason for the witnesses to lie because they did not know Petitioner and that they had no reason to testify except that they were subpoenaed. These comments do not constitute vouching, but rather are reasonably drawn inferences from the testimony.

Lodged Doc. No. 6, at 3.

It is well settled that a prosecutor in a criminal case "has a special obligation to avoid 'improper suggestions, insinuations, and especially assertions of personal knowledge.'" *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980) (quoting *Berger*, 295 U.S. at 88); *see also United States v. Edwards*, 154 F.3d 915 (9th Cir. 1998). A prosecutor may not impart to the jury his belief that a government witness is credible. *United States v. McKoy*, 771 F.2d 1207, 1210-11 (9th Cir.1985). Such improper vouching occurs when the prosecution "place[s] the prestige of the government behind the witness or . . . indicate[s] that information not presented to the jury supports the witness's testimony." *Roberts*, 618 F.2d at 533; *see United States v. Doss*, 630 F.3d 1181, 1193 (9th Cir. 2011); *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir.2005). When the credibility of witnesses is crucial, improper vouching is particularly likely to jeopardize the fundamental fairness of the trial. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.1991).

Reviewing the record in this case, the Superior Court reached a reasonable conclusion when it determined that no improper vouching had occurred during the prosecution's closing argument. In Petitioner's closing argument, Petitioner's counsel attempted to undermine the credibility of the eyewitnesses to the accident. In rebuttal, the prosecution attempted to bolster the credibility of the witnesses by showing that they had no reason to be biased. For instance, the prosecutor stated:

1    So, ladies and gentlemen, the three witnesses that you heard who
     saw the accident are unbias [sic].  They were here because of
2    subpoenas.  The doctor, Leon Owens, was unbias, didn't know [the
     victim] until he came into the hospital.  When you heard testimony
3    from William Buchanon, he didn't know who was involved.
     Those people would not come in and perjure themselves for no
4    reason.  I mean, it just wouldn't happen.  They are credible and,
     um, when they came in and testified, they did so very consistently
5    and they all said that . . . Alexander [sic] Radion ran the red light
     and struck [the victim]'s car, and you heard evidence from Mr.
6    Buchanon as well as Mr. Dunn that the Defendant took off down
     the street and then, what a coincidence, the police find him hiding
7    in the garage of a person's house he doesn't know.

8    Rep.'s Tr. at 289-90.  This, as well as other portions of the record, show the prosecution was

9    merely drawing inferences from the evidence available to the jury to conclude the witnesses were

10   not biased.  The prosecutor never placed the prestige of the government behind any of the

11   witnesses.  As such, any objection would have been meritless and it was reasonable for the

12   Superior Court to conclude that Petitioner's trial counsel was not ineffective.  Petitioner is not

13   entitled to relief on this claim.

14        7.  Claim VII

15        In Claim VII, Petitioner alleges that the failure of his counsel to object to the oral reading

16   of the jury instructions without them being recorded entitles him to habeas corpus relief "as a

17   matter of law."  The Superior Court denied this claim, concluding Petitioner failed to show any

18   error in the instructions or that such an error was prejudicial.  Lodged Doc. No 6., at 4.  Both

19   Petitioner's counsel and the prosecution stipulated that the court reporter did not have to

20   transcribe the jury instructions.  Rep.'s Tr. at 241.  Before the judge read the instructions to the

21   jury, copies were provided to each juror as well as to the prosecutor and Petitioner's counsel.  *Id.*

22   at 290-91.  After the instructions were read, counsel was asked to stipulate that the judge had

23   read the instructions substantially as typed.  *Id.* at 292.  The prosecution and Petitioner's counsel

24   stipulated as such.  *Id.*  Under these facts, Petitioner has failed to show that he was prejudiced by

25   the stipulation not to transcribe the jury instructions.  Contrary to Petitioner's contention, he was,

26   in fact, readily able to challenge the jury instructions.  *See* Claims II and III, *surpa*.  Petitioner

does not state how the instructions which were read to the jury altered from the written

instructions which are in the Clerk's Transcript.  *See* Clerk's Tr. at 92 et. seq.  While it may be

impossible for Petitioner to allege with specificity the differences between the oral jury

instructions and the written ones without the instructions being recorded, the fact that petitioner

fails to even allege that the instructions varied precludes a finding that he suffered prejudice as a

result.  As such, Petitioner is not entitled to relief on this claim.

        8.  Claim VIII

        In Claim VIII, Petitioner alleges that his trial counsel was ineffective for failing to cross-

examine one of the prosecution's witnesses, the passenger of the car Petitioner struck, about

whether the driver of the car Petitioner struck had been drinking.  In ruling on this claim, the

Superior Court stated:

> Petitioner generally claims that trial counsel's cross examination of
> witness Almir Dapo was insufficient because it failed to establish
> that the victim . . . was drinking alcohol before the accident.
> Petitioner does not support this claim with either argument or
> evidence.  Therefore, it is without merit.

Lodged Doc. No. 6, at 3.  Even if Petitioner were to bolster his claim with additional evidence or

argument, he would not be able to establish prejudice.  Whether the driver of the opposing car

had been drinking or not is irrelevant to Petitioner's conviction.  The evidence adduced at trial

established that the driver of the other vehicle was making a lawful left turn when Petitioner ran

through a red light and, without braking, hit the victim's vehicle at a high rate of speed.  A test of

Petitioner's blood established that his blood alcohol content was .15 percent, nearly twice the

legal limit.  As the sobriety of the victim could not have effected the outcome of Petitioner's trial,

Petitioner cannot establish prejudice and is not entitled to relief on this claim.

        9.  Claim IX

        In Claim IX, Petitioner contends that the state trial court acted in excess of its jurisdiction

when it imposed a victim restitution fine without conducting a hearing at which Petitioner was

present.  In Petitioner's traverse, Petitioner withdrew this claim.  Pet'r's Traverse, Docket No.

1  31, at 5.[3]  The withdrawal of the claim is prudent, as this court would lack jurisdiction to reach

2  the merits of this claim on a petition for habeas corpus.  *Bailey v. Hill*, 599 F.3d 976, 982 (9th

3  Cir. 2010) ("§ 2254(a) does not confer jurisdiction over a state prisoner's in-custody challenge to

4  a restitution order imposed as part of a criminal sentence.").

5         10.  Claim X

6        In Claim X, Petitioner argues that his appellate counsel was ineffective for failing to raise

7  any specific issues in his direct appeal to the California Court of Appeal.  Petitioner's appellate

8  counsel, acting pursuant to the California Supreme Court's decision in *People v. Wende*, 25 Cal.

9  3d 436, 158 Cal. Rptr. 839, 600 P.2d 1071 (1979), filed a brief that did not raise any specific

10  issues, impliedly suggesting that she believed Petitioner's appeal to be frivolous.  Counsel filed a

11  brief with the appellate court that summarized the procedural and factual history of the case, with

12  citations of the record.  She also attested that she has reviewed the record, explained her

13  evaluation of the case to her client, provided Petitioner with a copy of the brief, and informed

14  Petitioner of his right to file a *pro se* supplemental brief.  She further requested that the court

15  independently examine the record for arguable issues.  *See* Lodged Doc. No. 1.

16        A careful review of Petitioner's petition in the Superior Court shows that Petitioner did

17  not raise this claim in that petition.  Petitioner did, however, raise the claim in his petition to the

18  California Supreme Court.  *See* Lodged Doc. No. 9, at 6.  Therefore, Petitioner's claim has been

19  exhausted.  Even though the California Supreme Court summarily denied Petitioner's petition

20  without elaboration, *see* Lodged Doc. No. 10, the decision is still a decision on the merits entitled

21  to deference under AEDPA.  *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 785, 178

22  L.Ed.2d 624 (2011) (holding that 28 U.S. C. § 2254(d) does not require a state court to give

23  reasons before its decision can be deemed to have been adjudicated on the merits).

24

25      [3]  Petitioner filed three separate traverses.  Docket Nos. 28, 30, 31.  Two of them, Docket
26  Nos. 30 and 31, are identical.  The third makes the same arguments as the others but is formatted
differently.

In *Smith v. Robbins*, 528 U.S. 259 (2000), the Supreme Court upheld California's procedure set forth in *Wende*.  The Court concluded that while California's procedure differed slightly from the suggested procedure the Court had set forth in *Anders v. California*, 386 U.S. 738 (1967), the differences did not render the process unconstitutional.  *Robbins*, 528 U.S. at 279.  Thus, appellate counsel's failure to file a merits brief is not *per se* a violation of the right to appellate counsel.  Petitioner may still establish that his appellate counsel was ineffective if Petitioner's claims were not frivolous and that Petitioner was entitled to a merits brief.  *Id.* at 284.

The California Court of Appeal found Petitioner's appeal lacked merit.  *See* Slip Op. ("We have undertaken an independent examination of the entire record in this case and have found no arguable error that would result in a disposition more favorable to defendant.").  In habeas, the Sacramento County Superior Court found no constitutional violations in Petitioner's trial and the California Court of Appeal and the California Supreme Court summarily denied Petitioner's further petitions.  Lodged Doc. Nos. 6, 8, 10.  This court also has found Petitioner's claims to be lacking merit.  As such, appellate counsel made a reasonable determination in concluding that Petitioner's claims were frivolous.  Petitioner cannot establish that appellate counsel's actions fell below an objective standard of reasonableness.  Furthermore, as the California Superior Court and this court have reached the merits of Petitioner's claims stemming from his trial and determined that Petitioner is not entitled to relief, Petitioner cannot establish that he was prejudiced by his appellate counsel's actions.  As such, it is a reasonable conclusion that Petitioner's appellate counsel was not ineffective and Petitioner is not entitled to relief on his final claim.

## V.  REQUEST FOR AN EVIDENTIARY HEARING

Finally, Petitioner requests an evidentiary hearing on his claims.  (*See* Pet'r's Pet. at 1.) A court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support petitioner's claims, and if not, whether an evidentiary hearing

1   "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999); *see also Earp*

2   *v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005).  A petitioner requesting an evidentiary hearing

3   must also demonstrate that he has presented a "colorable claim for relief." *Earp*, 431 F.3d at

4   1167 (citations omitted).  To show that a claim is "colorable," a petitioner is "required to allege

5   specific facts which, if true, would entitle him to relief." *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th

6   Cir. 1998) (internal quotation marks and citation omitted).  In this case, Petitioner's claims are

7   readily determined by the record.  Petitioner has not alleged any additional facts that, if true,

8   would entitle him to relief and, therefore, Petitioner fails to demonstrate that he has a colorable

9   claim for federal habeas relief.  Moreover, the Supreme Court has recently held that federal

10  habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state

11  court that adjudicated the claim on the merits" and "that evidence introduced in federal court has

12  no bearing on" such review.  *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398, 1400

13  (2011).  Thus, his request will be denied.

VI.  CONCLUSION

15      Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary

16  hearing is DENIED.

17      For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for

18  writ of habeas corpus be DENIED.

19      These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

21  after being served with these findings and recommendations, any party may file written objections

22  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

23  to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be

24  served and filed within seven days after service of the objections.  The parties are advised that

25  failure to file objections within the specified time may waive the right to appeal the District

26  Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file,

1  Petitioner may address whether a certificate of appealability should issue in the event he elects to

2  file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254

3  Cases (the district court must issue or deny a certificate of appealability when it enters a final

4  order adverse to the applicant).

5  DATED:  September 9, 2011

6

7

8

9

10                                                    TIMOTHY J BOMMER
                                                      UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26